UNITED STATES of America

v.

Clifford BAILEY, Appellant.

UNITED STATES of America

v.

Ronald Clifton COOLEY, Appellant.

UNITED STATES of America

v.

Ralph WALKER, Appellant.

Nos. 77–1404, 77–1413 and 77–1502.

United States Court of Appeals,
District of Columbia Circuit.

April 23, 1982.

Richard S. Kohn, Washington, D. C. (appointed by this court), for appellant in No. 77–1404.

Robert A. Robbins, Jr., Washington, D. C. (appointed by this court), for appellant in No. 77–1413.

John Townsend Rich, Washington, D. C. (appointed by this court) for appellant in No. 77–1502.

David G. Hetzel, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., and John A. Terry and Steven R. Schaars, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee. William D. Pease and James F. Hibey, Asst. U. S. Attys., Washington, D. C., also entered appearances, for appellee.

Before WRIGHT and WILKEY, Circuit Judges and McGOWAN, Senior Circuit Judge.

Opinion for the Court filed by Senior Circuit Judge McGOWAN.

McGOWAN, Senior Circuit Judge:

In *United States v. Bailey*, 585 F.2d 1087, 1091 (D.C.Cir.1978), Judge Wilkey dissenting, this court reversed the convictions of appellants Bailey, Cooley, and Walker for violations of the Federal Escape Act, 18 U.S.C. § 751(a) (1976), on the grounds that the District Court "did not properly instruct the jury as to what constitutes an 'escape' and excluded relevant evidence regarding duress from the jury's consideration." The Supreme Court in turn reversed that decision, *United States v. Bailey*, 444 U.S. 394, 100 S.Ct. 624, 62 L.Ed.2d 575 (1980). The matter is now before the court on remand from the Supreme Court for consideration of certain claims of error which had been briefed and orally argued but which we did not find it necessary to resolve in view of the result reached. For the reasons set

forth below, we now affirm the convictions of Bailey, Cooley, and Walker.

## I

■ We turn first to three points common to all three appellants. They assert in the first instance that joinder of their cases in the indictment was incorrect under Rule 8(b), Fed.R.Crim.P., which provides for joinder only when defendants "are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." Claiming an absence of any joint activity, they would have us hold that the indictment should have been dismissed. At no time in the District Court, however, was this point ever raised, and it is not available for the first time on appeal.

Rule 12, Fed.R.Crim.P., provides that "failure by a party to raise defenses or objections which must be made prior to trial ... shall constitute waiver thereof," and it contains only a narrow exception: "the courts for cause shown may grant relief from waiver." To overcome the Rule 12 bar, appellants rely on the fact that they did move at trial to sever their cases under Rule 14, Fed.R.Crim.P. They argue that this action either serves to preserve a Rule 8(b) objection for appeal, or else supplies the "cause" for its failure to be raised in the District Court.

We find neither of these arguments persuasive. In *Cupo v. United States*, 359 F.2d 990, 993 (D.C.Cir.1969), this court was confronted with a similar situation. Judge Edgerton reasoned, and we agree, that while a pretrial motion need not state explicitly the grounds upon which a motion is made, it must contain facts and arguments that make clear the basis of defendant's objections. For instance, in *Cupo* two defendants objected on the grounds of misjoinder, although they failed to mention Rule 8 by name; the *Cupo* panel held that defendants had preserved their right to argue misjoinder on appeal, and in fact defendants' convictions were overturned on this ground. *Id.* at 992. On the other hand, at trial one defendant had objected to

his joinder only on the grounds of prejudice, and Judge Edgerton held that this defendant had not preserved his right to argue misjoinder on appeal. *Id.* at 993.

This reasoning comports with the purpose of Rule 12, which is to require that the District Court have ruled on the merits of an objection before that issue is placed before the Court of Appeals. Unless the motion clearly indicates the basis for objection, the District Court cannot consider that particular argument; if the issue is then sought to be raised on appeal, there is no ruling which the appellate court can review.

Applying the learning of *Cupo* to the instant case, we are convinced that appellants waived their misjoinder objections by not raising them at trial. Appellants' pretrial motions were lodged purely on the grounds of prejudice; they made no claim that they were not involved in the "same act or transactions," which would be the essence of a Rule 8 misjoinder claim. Nor do appellants show any "cause" for their failure to lodge a timely objection.

■ Second, appellants renew their argument, raised in timely fashion before trial, that their joinder was prejudicial. They would have us find that the District Court's denial of their motion to sever was an abuse of discretion. But appellants can point to no episodes during trial indicating that appellants suffered prejudice or that severance would have altered the outcome of their cases. Absent any such evidence, we cannot say that the District Court abused its discretion in failing to sever appellants' cases at the outset of this litigation.

■ Finally, appellants argue that they were prejudiced by certain of the jury instructions regarding the Attorney General's custody over federal prisoners. This problem stemmed from the unique facts of the case, and some explanation is necessary.

At the time of their escapes, Bailey and Walker had recently been brought to the District of Columbia Jail from the federal prison in Leavenworth, Kansas, pursuant to writs of *habeas corpus ad testificandum,* which are issued when it is necessary to

bring a federal prisoner into a different jurisdiction to testify in a pending criminal case. Cooley was serving a sentence for a federal crime in the District of Columbia Jail.

In their initial appeal, appellants argued that the Government failed to present sufficient evidence that any of the appellants were in the custody of the Attorney General at the time of their escapes. Since such custody is an element of the escape offense, they argued, the Government failed to prove its case. We settled this ambiguity of law, noting that prisoners transferred pursuant to writs of *habeas corpus ad testificandum* are presumed to be in the custody of the Attorney General indefinitely. *United States v. Bailey*, 585 F.2d at 1101–04. We also noted that the Government had presented sufficient evidence to create a jury question as to whether, at the time of their escape, Bailey, Walker, and Cooley had been committed to the Attorney General's custody through one means or another.

In deciding these issues, though, we may have created another, by mentioning in dictum that "[a]lthough the trial judge's instructions matched the general sense of our holding ... some portions of the instructions were confusing and might have invaded the province of the jury." *Id.* at 1104. Bailey and Walker now argue this very point, claiming that the jury instructions directed a verdict on the issue of whether appellants were in the custody of the Attorney General at the time of their escapes. Cooley, of course, concedes that the instructions in question dealt with Bailey and Walker specifically, and addressed the situation in which a prisoner has been transferred pursuant to an extraordinary writ. Nevertheless, he feels that "the sense of both paragraphs, when read together just as they were heard by the jury," is that all three defendants were in the custody of the Attorney General at the time of their escapes.[1]

Faced squarely with this issue on appeal, we must examine the offending instructions in light of the standard set out by the

Supreme Court most recently in *Cupp v. Naughten*, 414 U.S. 141, 146–47, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973). In *Cupp*, the Court held that a conviction will not be reversed on this ground unless "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Id.* at 147, 94 S.Ct. at 400. The Court further directed that "a single instruction to a jury may not be judged in artificial isolation but must be viewed in the context of the overall charge." *Id.* at 146–47, 94 S.Ct. at 400.

The instruction at issue provides as follows, with the allegedly misleading passage emphasized:

Now, with respect to each of the defendants who is on trial in this case the Court instructs you that defendants convicted either in this federal court or in the Superior Court of felonies, or in federal courts throughout the country are committed to the custody of the Attorney General of the United States. This is a general practice and the Court will take judicial notice of it and instruct you accordingly.

Prisoners, such as two of the prisoners in this case, defendants in this case who are convicted in another jurisdiction and who were in the custody of the Attorney General, were brought to this jurisdiction as the documentary evidence shows, because they were summoned as witnesses by another defendant in a proceeding then pending in the District of Columbia court. *They are still under the custody today of the Attorney General regardless of how they happened to be brought into the District of Columbia Jail.* (Tr. 800–801) (emphasis added).

We think that, in the context of the jury instructions as a whole, this particular passage was intended only to instruct the jury as to the law, and to show that prisoners remain within the custody of the Attorney General continuously when they are transferred pursuant to writs of *habeas corpus ad testificandum*. It did not go to the

---

1. Supplemental Brief for Appellant Cooley at 3.

elements necessary to prove escape, namely, whether the appellants had (1) been convicted of felonies, (2) been committed to the Attorney General, and (3) escaped subsequently. *See* 18 U.S.C. § 751(a) (1976). This was made clear by the first paragraph of the above-quoted passage, of which we said in our original panel opinion, "[W]e think it unlikely that the jury was [thereby] confused." *United States v. Bailey*, 585 F.2d at 1102 n.58.

## II

[4] Appellants make various other claims pertaining to their individual cases. Bailey argues that he was unfairly prejudiced by the Government's reference to his previous conviction for escape. (Tr. 9–12). As we noted in our original opinion, however, prior conviction of a felony is one of the elements of the federal crime of escape;[2] thus, it is quite clear that the Government was not only permitted, but indeed was required, to bring in evidence that Bailey had been convicted of some felony. That the Government chose to bring in evidence of escape, rather than of some lesser felony, is not in itself reversible error: we have recently stated that "the Government bears the heavy burden of proving its allegations beyond a reasonable doubt and is not required to limit itself to minimal proof." *United States v. Bridgeman*, 523 F.2d 1099, 1117–18 (D.C.Cir.), *cert. denied*, 425 U.S. 961, 96 S.Ct. 1743, 48 L.Ed.2d 206 (1975).

Furthermore, our examination of the record shows that the evidence was admitted in such a way as to minimize any prejudicial effects. The prosecutor made no effort to use its admission as an excuse to argue criminal propensity; in his closing argument he referred only to "copies of his [Bailey's] conviction" when asserting that all elements of the crime had been established. (Supp. Tr. 9). We are without warrant to disturb Bailey's conviction on this ground.

2. *United States v. Bailey*, 585 F.2d at 1105 n.68.

3. Appellant Walker also claims error in respect of a denial of a motion by him for a continu-

Bailey advances two other arguments. First, he claims that he was deprived of the effective assistance of counsel because of the short period of time allotted to his appointed counsel for trial preparation. Under the standards set forth by this court in *United States v. Decoster*, 624 F.2d 196 (D.C.Cir.1979) (*en banc*), however, this argument is plainly without merit, since we see no evidence that this problem affected counsel's performance at trial. Bailey's motion for a continuance was made on the day of trial (March 8, 1976) and was denied. The disposition of such a motion is committed to the discretion of the trial judge, *Ungar v. Sarafite*, 376 U.S. 575, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964), *United States v. Anderson*, 509 F.2d 312 (D.C.Cir.1974), *cert. denied*, 420 U.S. 991, 95 S.Ct. 1427, 43 L.Ed.2d 672 (1975), and is not to be disturbed absent facts establishing a clear abuse, *Gilmore v. United States*, 273 F.2d 79 (D.C.Cir.1959). We find no such abuse on this record.[3]

Finally, Bailey contends that the prosecutor's erroneous statement that Bailey had once been convicted of "armed bank robbery," when Bailey actually had been convicted only of robbery, was grounds for a mistrial. This argument is unpersuasive, however, in light of the applicable legal standard. In such circumstances an appellant can prevail only if he was prejudiced by the error, *Gaither v. United States*, 413 F.2d 1061, 1079 (D.C.Cir.1969), and it is quite clear, upon examination of the circumstances surrounding this misstatement, that the prosecutor's mistake had no effect on the outcome of Bailey's trial. The prosecutor made this mistake during his opening statement; upon objection by Bailey's counsel, the prosecutor quickly corrected himself, and the judge immediately issued a cautionary instruction which clarified the true nature of the evidence to be presented. (Tr. 11). Moreover, we note that the prose-

ance. We address that issue in Part III of this opinion, again finding no abuse of discretion.

cutor's misstatement did not go to the central issue of the case, which was whether Bailey had escaped from the District of Columbia Jail. In such a situation, the judge was well within the boundaries of his discretion in refusing to declare a mistrial.

Cooley advances similar contentions, arguing that the District Court's refusal to grant his two requests for mistrial and to subpoena certain witnesses was reversible error. But such contentions clearly require strong support from the record, as we noted above, and the record in Cooley's case manifestly does not provide that support.

■ Cooley first argues that Walker's collapse in the courtroom, of an apparent epileptic seizure, worked prejudice upon the other appellants. But only the trial judge is in a position to determine whether such an incident actually is prejudicial, and we are not disposed to overturn his decision. Nor does Cooley present any evidence that the Hanafi Muslim siege of Washington, D. C., which occurred on the second day of appellants' trial, created a tense atmosphere that might have worked prejudice upon the appellants. The record shows that the siege was never mentioned during the trial, and certainly it was unrelated to the central issues of the trial.

■ Second, Cooley argues that the court's refusal to subpoena certain witnesses to testify on Cooley's behalf regarding prison conditions constitutes reversible error. Rule 17(b), Fed.R.Crim.P., requires the judge to subpoena witnesses whose testimony the accused believes will support the accused's claims. But this rule also gives the judge the discretion not to subpoena such witnesses, if their evidence would merely be cumulative or if the accused's contention is so devoid of merit that the testimony would waste the court's time. The Supreme Court has since held that the federal escape statute did not contemplate a necessity or duress defense in this case, *United States v. Bailey*, 444 U.S. 394, 100 S.Ct. 624, 62 L.Ed.2d 575 (1980), and thus the judge properly refused to grant Cooley's request.

We have considered all of Bailey's and Cooley's claims and find them to be without merit. Accordingly, we affirm the convictions of Bailey and Cooley.

### III

Appellant Walker raises an issue of a different, and conceivably more substantial, nature. We conclude that, by reference to the precise circumstances reflected in the record before us, reversal of Walker's conviction for the reason asserted is not warranted. In the interest of rendering unnecessary similar appeals in the future, however, we think it appropriate to invoke our supervisory power to identify the procedure to be followed in recurring cases of this kind.

In the original trial on the merits, Walker earnestly sought, and succeeded in obtaining, the court's permission to represent himself. The court declined, however, to vacate the prior appointment of counsel, and expressly directed that counsel to serve as standby counsel sitting with appellant at the counsel table. On appeal, Walker now contends that he was deprived of his sixth amendment right to the assistance of counsel. Walker bases this claim on *Faretta v. California*, 422 U.S. 806, 835, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562 (1975), in which the Supreme Court for the first time ruled that a defendant has a sixth amendment right to represent himself, but only if he "knowingly and intelligently" forgoes his right to counsel. The gravamen of Walker's complaint is that the District Court failed to elicit an effective waiver of counsel before granting Walker's request to represent himself, and thus deprived Walker of his sixth amendment right to counsel.

Walker's purpose to represent himself was first manifested in a motion he assertedly filed on February 16, 1977. At a status hearing on March 1, 1977—a week before the scheduled trial date of March 8—the following colloquy occurred between the trial judge, appointed counsel (Armstrong), and Walker:

MR. ARMSTRONG: I have been appointed by the Court to represent Mr.

Ralph Walker who is now present in court. I spoke to Mr. Walker last week and at that time he told me that he wished to represent himself at this trial, and that he had filed motions with the Court asking that my appointment as his counsel be vacated, and that he be allowed to represent himself. I have not seen copies of those motions, but he did inform me of that in person last week. In view of that, since I understand he has a right to represent himself if he so wishes, I would move the Court at this time to vacate my appointment as Mr. Walker's counsel.

THE COURT: I haven't seen Mr. Walker's motion, either. Have you seen that, Mr. Patterson?

THE DEPUTY CLERK: No, Your Honor, I haven't seen it.

THE DEFENDANT WALKER: I sent a notarized copy to you, Your Honor. One to you and one to the District Attorney's office.

THE COURT: Do you have any special reason for wishing to have Mr. Armstrong vacated?

THE DEFENDANT WALKER: Do I have any special reason for wishing to have Mr. Armstrong vacated? Yes. Yes, I do. For one thing, I feel that I'm mentally competent and I feel that I'm intellectually capable of representing myself. I feel that by me representing myself it will enhance my possibilities of showing the jury that I am not guilty of the charge as set forth by the District Court and the U.S. Attorney's office.

I feel that—I just feel that my chances at winning this case in this court of law would be enhanced by me representing myself, and I feel that I'm qualified to do so as I have studied law at Leavenworth for three years, and those are the reasons that I feel that I should be allowed to represent myself, and that I have a constitutional right to self-representation.

THE COURT: Well, all right. Mr. Armstrong, under the circumstances I will have to decline to vacate you and ask that you be available so that he may consult with you, if he wishes, professionally.[4]

From this point on in the proceedings, Walker was allowed to represent himself. His appointed counsel, Mr. Armstrong, served as standby counsel, available to help Walker upon Walker's request.[5]

**A. The Sixth Amendment Prior to *Faretta*.**

The sixth amendment guarantees to an accused person the right "to have the Assistance of Counsel for his defence." U.S. Const.amend. VI. While the complementary right—not to have assistance—was not accorded similar constitutional status until recently, it was well-established that under some circumstances the assistance of counsel can be waived. Section 35 of the Judiciary Act of 1789, 1 Stat. 73, 92, enacted by the First Congress only one day before the sixth amendment was proposed, provided that "in all the courts of the United States, the parties may plead and manage their own causes personally or by the assistance

---

**4.** Tr. 4–6.

**5.** Walker advances, as a separate ground for reversal, the trial court's denial of his motion to postpone the trial to afford him an enlarged period for preparation. This motion was made the day after Walker's spirited and confident assertions in support of both his constitutional right and his ability to represent himself were credited by the judge. Those representations gave no intimation to the judge that his grant of Walker's request would entail the postponement of the scheduled trial of Walker and his co-defendants.

The indictments in these cases, for escape and prison breach, were returned on November 23, 1976. One week later counsel was appointed, and on December 2 pleas of not guilty were entered. On December 16 the court fixed January 10, 1977 as the trial date. A new trial date of March 8 was set by reason of motions for mental examination. Although Walker, at a status hearing on March 1, asserted, and was granted, his constitutional right to represent himself, his purpose to do so had been formed as early as February 16 when he claims to have filed a motion to this end.

Under all the circumstances, we find no abuse by the judge of the discretion which was his to deny the motion for a continuance.

of ... counsel." [6] Necessarily, the Supreme Court was forced to grapple repeatedly with the issue of what constitutes an effective waiver of counsel.

As a result, the Court's stance on effective waiver of counsel has been longstanding. The Court first defined effective waiver, in the context of an accused's right to counsel, as "an intentional relinquishment or abandonment of a known right or privilege." *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). Since then, the Court has reaffirmed this precept in similar formulations. *Carnley v. Cochran*, 369 U.S. 506, 513, 82 S.Ct. 884, 888, 8 L.Ed.2d 70 (1962) (accused must "intelligently and understandingly waive the assistance of counsel"); *Von Moltke v. Gillies*, 332 U.S. 708, 727, 68 S.Ct. 316, 324, 92 L.Ed. 309 (1948) (accused must enter into waiver "competently, intelligently, and with full understanding of the implications"); *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279, 63 S.Ct. 236, 241, 87 L.Ed. 268 (1942) (accused must "know[ ] what he is doing and his choice [must be] made with eyes open").

In these earlier pronouncements the Court went beyond the mere assertion that the defendant must "intelligently" waive his right, to discuss the Government's burden of proof in showing an intelligent waiver. As early as *Johnson v. Zerbst*, it was said that " 'courts indulge every reasonable presumption against waiver.' " [7] With more specific reference to waiver of counsel, the *Johnson* Court also held that the effectiveness of waiver "should be clearly determined by the trial court, and it would be *fitting and appropriate* for that determination to appear upon the record." [8] In *Carnley*, the Court converted the *Johnson* Court's suggestion into a requirement that

evidence of the defendant's "knowing and intelligent" waiver be visible in the record:

> Presuming waiver from a silent record is impermissible. The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver.[9]

In *Von Moltke v. Gillies*, 332 U.S. 708, 724, 68 S.Ct. 316, 323, 92 L.Ed. 309 (1948), Justice Black, speaking for four Justices of a majority of six, extended this principle to require that a District Court judge engage in an extensive colloquy with the defendant:

> To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter.

From these cases a general principle emerged. No court has ever apparently gone so far as to require that Justice Black's lengthy litany of questions be followed to the letter, in a fashion similar to the *"Miranda"* warning, *see Hsu v. United States*, 392 A.2d 972, 983 (D.C.App.1978), but pre-*Faretta* courts have uniformly required that the record, by reason of judicial inquiry or otherwise, contain evidence of a defendant's knowing and informed waiver.[10]

### B. The Emergence of *Faretta*.

Against this backdrop, the Supreme Court held for the first time in *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45

---

6. *See Faretta v. California*, 422 U.S. at 812–13, 95 S.Ct. at 2529–2530. The right to represent oneself is now codified at 28 U.S.C. § 1654 (1976).

7. 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938), *quoting Aetna Ins. Co. v. Kennedy*, 301 U.S. 389, 393, 57 S.Ct. 809, 812, 81 L.Ed. 1177 (1937).

8. *Johnson v. Zerbst*, 304 U.S. at 465, 58 S.Ct. at 1023 (emphasis added).

9. 369 U.S. at 516, 82 S.Ct. at 890.

10. *See, e.g., United States v. Harrison*, 451 F.2d 1013, 1014 (2d Cir. 1971); *Spanbauer v. Burke*, 374 F.2d 67 (7th Cir. 1966), *cert. denied*, 389 U.S. 861, 88 S.Ct. 111, 19 L.Ed.2d 127 (1967).

L.Ed.2d 562 (1975), that a defendant has a constitutional right to dispense with the assistance of counsel and to represent himself. By so holding, the Supreme Court put the District Court judge in a new, and unenviable, position. Whereas before *Faretta* the focus of the judge was upon the constitutional necessity to provide counsel if a defendant's attempted waiver of his right to counsel was inadequate, now the judge is also bound by constitutional considerations to grant a request for self-representation if it appears that the choice of that right is, as the Supreme Court put it in *Faretta, id.* at 835, 95 S.Ct. at 2541, made "competently and intelligently." It seems evident that the considerations relevant to an effective waiver may vary depending upon which right is being asserted.

We think the *Faretta* Court can fairly be taken as recognizing this fact. It is true that it began its brief discussion of the waiver requirement with a general definition of effective waiver, which in essence was a composite of earlier pre-*Faretta* definitions: a defendant cannot waive counsel unless he does so "knowingly and intelligently." *Id.* It also went on to elaborate upon this principle, quoting its earlier decision in *Johnson v. Zerbst* for the proposition that "in order to represent himself, the accused must 'knowingly and intelligently' forgo those relinquished benefits." [11] But in what is surely of primary significance in the Court's discussion of waiver in the context of its newly-created right, the Court ended its discussion of waiver by quoting this language from *Adams*:

> Although defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, *he should be made aware of the dangers and disadvantages of self-representation*, so that the record will establish that "he knows what he is doing and his choice is made with eyes open." [12]

We conclude from the foregoing that, in the case of the defendant who articulately and unmistakably asserts his desire to avail himself of the constitutional right to self-representation established by *Faretta*, the fact of central concern to the Supreme Court is awareness by the defendant of "the dangers and disadvantages" attendant upon that course. The most certain assurance of that awareness is by a colloquy on the record between judge and defendant. The inquiry so made by the trial court should be addressed, and normally may be confined, to that subject.

Had the District Court in this case made a brief intercession on the record of this kind, the disposition of Walker's appeal would have been greatly facilitated. Indeed, it would seem not unlikely that any appeal on this point would have been forgone as patently frivolous. The most efficient dispatch of judicial business occurs when a short discussion on the record in the trial court can effectively limit both the number of appeals and the problems presented by those that are nevertheless filed.

In future cases involving a criminal defendant's claim of his constitutional right to self-representation, we, in the exercise of our supervisory power over the administration of criminal justice in this circuit, enjoin upon the District Court the practice of making clear on the record the awareness by defendants of the dangers and disadvantages of self-representation as to which the Supreme Court in *Faretta* has voiced its concern. It is obviously in the interest of all participants in a criminal proceeding, including the prosecutor, to be familiar with this requirement and to be alert to its effectuation.

C. The Proper Disposition of Walker's Appeal.

Our prescription of the procedure to be followed in the future in the interest

---

11. 422 U.S. at 835, 95 S.Ct. at 2541, *quoting Johnson v. Zerbst*, 304 U.S. at 464–65, 58 S.Ct. at 1023.

12. 422 U.S. at 835, 95 S.Ct. at 2541 (emphasis added), *quoting Adams v. United States ex rel. McCann*, 317 U.S. at 279, 63 S.Ct. at 241.

of efficient judicial administration is not, obviously, dispositive in and of itself of Walker's appeal on this point. Instead, we look to the circumstances discernible from the record in the particular case bearing upon the reasonableness of the trial judge's response to Walker's claim of his constitutional right to self-representation. Having done so, we conclude that the interests of justice do not compel reversal.[13]

Preliminarily we note that a trial judge confronting perhaps for the first time *Faretta*'s newly-created constitutional right is peculiarly sensitive to the necessity of recognizing and implementing that right. In this instance no participant in this proceeding suggested to the judge that Walker may have needed, or indeed would have profited or been influenced by, any explicit warning by the court as to the pitfalls inherent in self-representation.

It is quite clear from the record that Walker consciously and emphatically wanted to represent himself. That fact alone is not, of course, conclusive, but the manner and content of its manifestation may be illuminative of a defendant's fixed purpose to adhere, even in the face of a warning, to his claim of constitutional right. Walker's explanation for his wish to dispense with counsel aptly illustrates the voluntary and purposive nature of his action:

> I feel that by me representing myself it will enhance my possibilities of showing the jury that I am not guilty of the charge as set forth by the District Court and the U.S. Attorney's Office.
>
> I feel that—I just feel that my chances at winning this case would be enhanced by me representing myself.

There is no possibility here that Walker was misled or coerced into waiving his right to counsel.[14] Contrarily, he had been represented by competent appointed counsel for several weeks, and it is clear from the record that such counsel sought withdrawal only because his client was insisting upon self-representation. We may also surmise, as presumably did the judge, that there was some method in Walker's seeming madness. His defense against the escape charge was that the allegedly dangerous and intolerable conditions of the jail in which he was housed justified his action in leaving. He was surely entitled to think that he could himself most effectively and appealingly make those conditions known to the jury.

Likewise, we find evidence in the record from which the judge could have concluded that Walker was making an *informed*

---

**13.** Walker presses upon us the position that, absent an explicit warning by the judge of the perils in self-representation, he cannot be deemed to have knowingly forgone his right to counsel; and that his conviction must accordingly be reversed. Such a result is compelled, it is said, no matter what other indication there may be in the record that the defendant knew of such perils but chose, in the face thereof, to insist upon his constitutional right to represent himself.

While all the federal courts of appeals would presumably agree that professional and prudent judicial administration should customarily embrace such a warning, they are far from being uniformly hospitable to Walker's position. Post-*Faretta* cases at odds with it are *United States v. McFadden*, 630 F.2d 963 (3d Cir. 1980), *cert. denied*, 450 U.S. 1043, 101 S.Ct. 1763, 68 L.Ed.2d 241 (1981); *Mixon v. United States*, 608 F.2d 588 (5th Cir. 1979), *vacated on other grounds*, 616 F.2d 253 (5th Cir. 1980), 620 F.2d 486 (5th Cir. 1980); *United States v. McCaskill*, 585 F.2d 189 (6th Cir. 1978); *United States v. Trapnell*, 638 F.2d 1016 (7th Cir. 1980); *United States v. Pilla*, 550 F.2d 1085 (8th Cir.), *cert. denied*, 432 U.S. 907, 97 S.Ct. 2954, 53 L.Ed.2d 1080 (1977). In two circuits similar rulings have been made in state *habeas* cases: *Maynard v. Meachum*, 545 F.2d 273 (1st Cir. 1976); *United States ex rel. Konigsberg v. Vincent*, 526 F.2d 131 (2d Cir. 1975). Only the Ninth Circuit has generally insisted that reversal follow upon a failure by the judge to address warnings to the defendant directly. *United States v. Bird*, 621 F.2d 989 (9th Cir. 1980).

**14.** In *Von Moltke v. Gillies*, 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309 (1948), petitioner was convicted of violating the Espionage Act of 1917. Before trial she signed a paper purporting to waive her right to counsel. The Supreme Court, reversing her conviction, found her waiver suspect on many grounds, one of which was that she spoke German as a native language and may not have understood the words used on the waiver document. Furthermore, there was significant evidence that FBI agents pressured her into signing the waiver. *See also Carnley v. Cochran*, 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962).

choice. Most notably, Walker adverted to his three years of law study:

> ... I feel that I'm qualified to do so as I have studied law at Leavenworth for three years.

That this exposure to the law included familiarity with *Faretta*, including its reference to "the dangers and disadvantages of self-representation," is revealed in his articulate and positive assertion that he had a constitutional right to represent himself:

> ... [T]hose are the reasons that I feel that I should be allowed to represent myself, and that I have a constitutional right to self-representation.

Moreover, we note that Walker had previously been convicted of a felony, a factor which necessarily indicates that he had some knowledge and understanding of the relevant law and courtroom procedure. In a somewhat similar situation, the Second Circuit in *United States ex rel. Konigsberg v. Vincent*, 526 F.2d 131, 135 (2d Cir. 1975), *cert. denied*, 426 U.S. 937, 96 S.Ct. 2652, 49 L.Ed.2d 388 (1976), overruled its own earlier decision to the contrary, and held that "specific 'factual background' may in some cases excuse the judge's failure to give 'explicit warning and advice' regarding the waiver of counsel," even absent other evidence [*e.g.*, legal training] such as is present in Walker's case.[15]

Finally, there is the fact that the trial judge expressly declined Walker's request to vacate the appointment of counsel, and expressly directed that counsel to continue to be present at the counsel table throughout trial for consultation by the defendant conducting his own defense. This could only be interpreted, by Walker as well as by everyone else who heard it, as speaking eloquently of the problems likely to be encountered in the course of self-representation. It also provided a hedge against them freely available to Walker under what might well prove to be the sobering circumstances of self-representation during the trial itself. This was hardly the act of a judge sensitive only to the danger of being reversed if he denied Walker's aggressive assertion of the constitutional right recently conferred upon him by the Supreme Court. It is a factor which looms large in the record of the proceedings recognizing Walker's constitutional right, and one highly appropriate for us to consider in appraising the rationality of the judge's conduct of those proceedings.

Viewing in retrospect the foregoing factors we have identified as supporting the trial judge's action, it is of interest to note Judge Coffin's opinion for the First Circuit in *Maynard v. Meachum*, 545 F.2d 273 (1st Cir. 1976). After asserting that "the absence of explicit bench warnings or a colloquy on the record" are not essential to a finding of effective waiver, he went on to say that the trial judge "may properly consider ... such factors as his [defendant's] involvement in previous criminal trials, his representation by counsel before trial, and the continued presence of advisory counsel at trial in determining whether he understood what he was getting into." *Id.* at 279. All of these are present in the record before us.

It is clear that *Faretta* cannot, and does not, contemplate that the propriety of granting a defendant's right to represent himself shall be judged by what happens in the subsequent course of that representation.[16] It is the record made in recognizing that right that is determinative. On that record before us in this case, Walker's claim on appeal of the invalidity of the trial judge's grant of his request is not persuasive as to any necessity to reverse his conviction.

---

The convictions of Bailey, Cooley, and Walker are affirmed. In the case of Walk-

---

15. *United States ex rel. Konigsberg v. Vincent,* 526 F.2d at 135, *quoting United States v. Rosenthal,* 470 F.2d 837, 845 (2d Cir. 1972).

16. As the Supreme Court said in *Faretta,* "... a defendant who elects to represent himself cannot thereafter complain that the quality of his own defense amounted to a denial of 'effective assistance of counsel.'" 422 U.S. at 834–35 n.46, 95 S.Ct. at 2540–2541 n.46.

er, the attention of the District Court is particularly drawn to the accompanying admonition hereinabove given, pursuant to our general supervisory power, that in future claims of constitutional rights to self-representation, the trial judge should warn the defendant on the record of the dangers and disadvantages of self-representation. Due regard for the concern specifically expressed on this score by the Supreme Court in *Faretta*, as well as for sound principles of efficient judicial administration, mandate this course of action.[17]

*It is so ordered.*

---

**17.** Of those courts upholding convictions based on a record not containing an express warning, several have stressed the desirability of such a warning. For example, in *Trapnell, see* note 13 *supra*, the court stated: "Although we believe that a fuller explanation of the drawbacks of self-representation should have been made by the trial court in Trapnell, we find that the record establishes that Trapnell's decision to represent himself was made intelligently and with knowledge of the dangers and disadvantages of self-representation." 638 F.2d at 1029. The Second Circuit in *Konigsberg* made a similar comment: "While it would have been better if [the judge] had given Konigsberg 'explicit warning and advice' when Konigsberg decided to represent himself, under all the circumstances the judge's failure to do so did not amount to constitutional error." 526 F.2d at 134.