**UNITED STATES of America, Appellee,**

v.

**Susan Viola KLAT, Appellant.**

**No. 97–3075.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 2, 1998.

Decided Sept. 22, 1998.

**1260**

Mary Manning Petras, appointed by the Court, argued the cause and filed the briefs for appellant.

David B. Goodhand, Assistant United States Attorney, argued the cause for appellee, with whom Wilma A. Lewis, United States Attorney, John R. Fisher and Elizabeth Trosman, Assistant United States Attorneys, were on the brief. Mary–Patrice Brown, Assistant United States Attorney, entered an appearance.

Before: WALD, WILLIAMS and TATEL, Circuit Judges.

WALD, Circuit Judge:

A jury convicted Susan Viola Klat of threatening to assault the Clerk of the United States Supreme Court, William Suter, and the Chief Justice of the United States, William Rehnquist. On appeal, appellant challenges her conviction and sentence based on

a number of alleged errors made by the district court, including (1) allowing her to appear *pro se* at a hearing to determine her competency to stand trial; (2) failing adequately to warn her of the dangers and disadvantages of self-representation; (3) failing to dismiss the indictment as duplicitous; (4) failing to give the jury a special unanimity instruction; and (5) failing to depart downward in sentencing on the basis of diminished capacity.

We reject all of the defendant's claims except for the district court's failure to provide appellant with counsel at a hearing to determine her competency to stand trial. We hold that the defendant had a Sixth Amendment right to counsel at this hearing and that the district court therefore erred in allowing appellant to appear *pro se*. As a remedy for this error, we remand the case to the district court for an evidentiary hearing to determine whether the competency hearing could have come out differently if, as the Sixth Amendment requires, the defendant had been represented at the hearing. If it is determined that counsel could have altered the outcome of the competency hearing, appellant's conviction must be vacated and appellant afforded a new trial.

## I. BACKGROUND

On October 25, 1996, appellant was indicted on two counts of threatening to assault Mr. Suter (Count 1) and Chief Justice Rehnquist (Count 2) with the intent to retaliate against them on account of their performance of official duties. The government's evidence against appellant included letters and voice mail sent to a California government official as well as statements made to co-workers, friends, Federal Bureau of Investigation agents and employees at the United States Supreme Court, spanning a six-month period from February 29, 1996 through August 25, 1996.[1] The government claimed that these

---

1. Prior to August, 1996, appellant was living and working as a nurse in San Diego, California. In September of 1995, appellant filed a civil rights suit against the State of California, which was dismissed on Eleventh Amendment grounds. *See* Trial Tr. at 156, 159. Subsequently, appellant petitioned the United States Supreme Court (1) for a stay, which was denied in February, 1996

and (2) for a writ of certiorari, which was denied in June 1996. *See id.* at 272, 275. After her petition for a writ of certiorari was denied, appellant began announcing her intention to move to Washington, D.C. in order, as she told several people, to ensure that the Supreme Court heard her case. *See id.* at 187. Appellant did in fact move to the Washington, D.C. area, where she

various statements, letters and messages constituted threats to assault Mr. Suter and Chief Justice Rehnquist in violation of 18 U.S.C. §§ 115 and 1114.

Prior to her indictment, on August 27, 1996, appellant was brought before a magistrate for a probable cause hearing. Appellant was represented at this hearing by appointed counsel. The magistrate found probable cause and remanded appellant back to jail for a forensic screening to ascertain whether appellant was competent to stand trial. Dr. Bruce Cambosos performed this screening and concluded that appellant was competent to stand trial. A bail hearing was held on September 3, 1996, where the magistrate granted appellant's request through counsel that she be released on her own recognizance.

On September 24, 1996, appellant filed a motion requesting that her attorney be removed and that she be named counsel of record. Attached to this motion was a signed "Waiver of Right to Assigned Counsel." In these two documents, appellant stated, *inter alia*, that she was "aware of the implications and responsibilities involved that accompany being represented in propria persona and waive[d] the right to have supportive counsel present or involved at this time"; that she "hereby relinquishe[d] the right to retain the federal public defender as counsel and w[ould] proceed with all procedures and proceedings connected with this case in propria persona hereinafter"; and that she was "aware that both the Sixth Amendment to the Constitution of the United States and Fed. Rules of Crim. Proc., rule [sic] 44(a) provide for the right to assignment of counsel and elect[ed] to waive this right." J.A., Ex. 3. Appellant requested in her motion an order naming her counsel of record "officially" as of September 17, 1996, at 4:30 p.m. *Id.*

Appellant was arraigned on November 1, 1996. At her arraignment hearing, she followed up on her motion to remove appointed counsel. Appointed counsel also moved to withdraw because appellant had filed a civil suit against him. The district court granted counsel's motion to withdraw, and, based on appellant's behavior at the hearing—which the court described as "bizarre"—ruled that there was "reasonable cause" to believe that appellant was suffering from a mental disease or defect that rendered her unable to understand the nature of the proceedings against her. The district court then ordered appellant into custody to be examined pursuant to 18 U.S.C. § 4241(b). Although the district court had granted appointed counsel's motion to withdraw, the court did not appoint new counsel for appellant.

Appellant spent nearly a month at Carswell Federal Medical Center in Forth Worth, Texas. There, she was examined by Dr. James Shadduck, a forensic psychologist. Appellant allowed herself to be interviewed by Dr. Shadduck but refused to participate in formal psychological testing. Based on his observations of appellant, Dr. Shadduck concluded that she was competent to stand trial. *See* Appellant Br., Attach. C. Dr. Shadduck did note "strong evidence of a narcissistic personality disorder, and the possibility of a diagnosis of a bipolar disorder," *id.* at 6, and that appellant "occasionally evidenced excessive suspiciousness that verged on paranoia." *Id.* at 5. However, Dr. Shadduck also found that appellant displayed "at least average intellectual abilities, and no notable cognitive

was ultimately arrested by the FBI. Appellant's allegedly threatening acts included several statements made to co-workers to the effect that she was going to go to the Supreme Court and "blow away anybody" who stood in her way, *see id.* at 219, and a letter addressed "[t]o the clerk and Justices of the Supreme Court" which stated, among other things, the following:

Denying me or anyone else the Constitution's protection while disregarding federal law only demonstrates that this Court lacks the interest and ability to protect all individuals' rights or administer justice in any form. One shouldn't have to resort to creating casualties, such as

the Oklahoma bombing, to get your attention. Unfortunately, experience shows that this is the only method that creates change and actually works. The Declaration of Independence distinctly states that whenever any form of government becomes destructive of these ends, it is the right of the people to alter or abolish it. Nowhere in this declaration does it state that corruption is to be tolerated. An eye for an eye may well be the only solution left to justice in this country. The writ will still be written and the story told with the ultimate outcome explained by whoever survives this madness and is left standing. *Id.* at 177.

impairments." *Id.* at 7. Ultimately, Dr. Shadduck concluded that appellant was "not presently suffering from a mental disease or defect which would render her unable to understand the nature and consequences of the proceedings against her or to assist properly in her own defense." *Id.* Dr. Shadduck's forensic report was submitted to the district court on December 16, 1996.

On January 16, 1997, the district court held a hearing to determine whether appellant was competent to stand trial and whether she could represent herself at trial. Appellant appeared at this hearing *pro se.* Based on Dr. Shadduck's report and its own observation of appellant's behavior at this hearing, the district court found that appellant was in fact competent and, further, that she could represent herself at trial. Appellant agreed at this hearing to the appointment of standby counsel; standby counsel was appointed on January 28, 1997, and appeared with appellant at all subsequent proceedings.

The jury trial commenced on February 24, 1997. Appellant gave the opening statement and cross-examined the first two government witnesses. However, after cross-examining the second witness, appellant informed the court that she could not continue to "confront" her friends because it was "too emotional" for her. Trial Tr. at 213. Accordingly, standby counsel took over the rest of the trial and sentencing. On February 26, 1997, the jury found appellant guilty on both counts of the indictment. On May 27, 1997, appellant was sentenced to a term of 57 months imprisonment for each count, to run concurrently, to a year of supervised release for each count, to run concurrently, and to a $100 special assessment for each count.

## II. DISCUSSION

### A. *Right to Counsel at the Competency Hearing*

On November 1, 1996, appellant was arraigned before the district court. Appellant was represented by appointed counsel at her arraignment hearing; however, by the close of the hearing, the district court had both (1) granted appointed counsel's motion to withdraw from the case and (2) ordered appellant into custody, finding "reasonable cause" to believe that appellant was incompetent to stand trial. The district court did not subsequently appoint new counsel. Accordingly, appellant was without counsel from the close of her November 1, 1996 arraignment hearing until the district court found her competent to stand trial and to waive her right to counsel at the January 16, 1997 hearing.

■ A defendant has a right to counsel at every critical stage of a criminal prosecution. *See Estelle v. Smith,* 451 U.S. 454, 469–71, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981); *Kirby v. Illinois,* 406 U.S. 682, 688–89, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972). A competency hearing is one such critical stage. *See, e.g., United States v. Byers,* 740 F.2d 1104, 1119 (D.C.Cir.1984) (in banc) (noting that stage is critical where defendant is "confronted 'by the legal system,' in that he ha[s] a lawrelated choice before him, and could ... profit from the expert advice of counsel ...." (quoting *Estelle v. Smith,* 451 U.S. at 471, 101 S.Ct. 1866)).[2] Of course, a defendant may waive her right to counsel and, indeed, the Supreme Court in *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), has held that a defendant has a Sixth Amendment right to represent herself. However, the Supreme Court noted that while a defendant has a right to represent herself, this defendant must "knowingly and intelligently" forgo the benefits traditionally associated with the right to counsel in order to be allowed to proceed *pro se. Id.* at 835, 95 S.Ct. 2525.

■ In the instant case, appellant had clearly indicated her desire to waive her right to counsel and to proceed *pro se.* However, at the November 1, 1996 arraignment hearing the district court made an explicit finding that there was "reasonable cause" to believe that appellant was mentally incompetent to stand trial. Under these circumstances, we find that the district court erred in allowing appellant's appointed counsel to

**2.** *See also* 18 U.S.C. § 4247(d) ("At a hearing ordered pursuant to this chapter the person whose mental condition is the subject of the hearing shall be represented by counsel....").

withdraw without appointing new counsel to represent appellant until the issue of her competency to stand trial had been resolved. This finding is based on our conclusion that, where a defendant's competence to stand trial is reasonably in question,[3] a court may not allow that defendant to waive her right to counsel and proceed *pro se* until the issue of competency has been resolved.[4]

The Supreme Court has not explicitly considered this issue; however, we find support for our conclusion from the Court's decision in *Pate v. Robinson*, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966), where it found that a defendant could not waive his right to a competency hearing when there was a question as to his competency to stand trial: "[I]t is contradictory to argue that a defendant may be incompetent, and yet knowingly or intelligently 'waive' his right to have the court determine his capacity to stand trial." *Id.* at 384, 86 S.Ct. 836. Likewise, we find it contradictory to conclude that a defendant whose competency is reasonably in question could nevertheless knowingly and intelligently waive her Sixth Amendment right to counsel.[5] Such a defendant may not proceed *pro se* until the question of her competency to stand trial has been resolved.[6]

Accordingly, we find that appellant was erroneously denied her Sixth Amendment right to counsel because the district court found reasonable cause to doubt appellant's competency to stand trial and yet failed to appoint counsel to represent her through the resolution of the competency issue. This

finding does not end our inquiry, however, for we must also determine the proper remedy for this erroneous denial of counsel. In *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), the Supreme Court noted that there are "some constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error ...."; the Court listed the right to counsel as one such right. *Id.* at 23 & n. 8, 87 S.Ct. 824. The Supreme Court has not, however, held that all non-trial denials of counsel require automatic reversal of a defendant's conviction. For example, in *Coleman v. Alabama*, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970), the Court held that a preliminary hearing constituted a critical stage in the criminal process and that the defendants were thus entitled to counsel at the hearing. However, the Court did not automatically reverse the defendants' convictions but instead remanded the case to the state court to determine "whether the denial of counsel at the preliminary hearing was harmless error under *Chapman v. California* ...." *Id.* at 11, 90 S.Ct. 1999.

■ In *Satterwhite v. Texas*, 486 U.S. 249, 108 S.Ct. 1792, 100 L.Ed.2d 284 (1988), the Supreme Court explained that the determination of whether a Sixth Amendment violation requires automatic reversal turns on the extent to which the violation pervades the entire criminal proceeding. As the Court noted: "Some constitutional violations ... by their very nature cast so much doubt on the fairness of the trial process that, as a matter

---

**3.** "Where a defendant's competence to stand trial is reasonably in question" means where, as in this case, the trial court has found "reasonable cause" under 18 U.S.C. § 4241(b); or, of course, where the trial court's failure to do so would be reversible as an abuse of discretion.

**4.** We note that the district court did not find, prior to the competency hearing, that appellant had waived her right to counsel. However, from the standpoint of the Sixth Amendment, it is irrelevant whether the district court erroneously found a waiver of counsel or simply neglected to appoint counsel for appellant: absent a valid waiver of counsel, it is constitutional error for a court to allow a defendant to proceed *pro se* once the right to counsel has attached.

**5.** *See also United States v. Purnett*, 910 F.2d 51, 55 (2d Cir.1990) ("Logically, the trial court can-

not simultaneously question a defendant's mental competence to stand trial and at one and the same time be convinced that the defendant has knowingly and intelligently waived his right to counsel.").

**6.** In *Godinez v. Moran*, 509 U.S. 389, 113 S.Ct. 2680, 125 L.Ed.2d 321 (1993), the Supreme Court held that the standard for determining competency to stand trial is the same as the standard for determining competency to waive counsel. *See id.* at 399–400, 113 S.Ct. 2680. Pursuant to the Court's decision in *Godinez*, therefore, a court cannot logically question a defendant's competence to stand trial while at the same time finding the defendant competent to waive counsel—the standard is the same for both determinations.

of law, they can never be considered harmless. Sixth Amendment violations that pervade the entire proceeding fall within this category." *Id.* at 256, 108 S.Ct. 1792. The Court further noted that in previous cases requiring automatic reversal, "the deprivation of the right to counsel affected—and contaminated—the entire criminal proceeding." *Id.* at 257, 108 S.Ct. 1792.

In order to determine whether the Sixth Amendment violation here affected and contaminated the entire criminal proceeding—thus requiring automatic reversal under *Satterwhite*—we remand the case for an evidentiary hearing to determine whether the competency hearing could have come out differently if appellant had been represented by counsel. The Supreme Court has expressed reluctance to permit retrospective hearings on questions of mental competency, *see Pate,* 383 U.S. at 387, 86 S.Ct. 836; however, the purpose of the hearing here is not to determine, retrospectively, whether appellant was or was not in fact incompetent to stand trial. Rather, the purpose of the hearing is to determine whether counsel might have made certain decisions or arguments which could have changed the result of the competency hearing. The Seventh Circuit utilized a similar standard in attempting to determine whether a constitutional error in a defendant's competency hearing required reversal, stating that the "question is whether there is a reasonable possibility that [absent the constitutional error] the trial judge would have found [the defendant] unfit." *United States ex rel. Bilyew v. Franzen,* 686 F.2d 1238, 1245 (7th Cir.1982). Similarly, the United States District Court for the Eastern District of Virginia found that the defendant there did not need to demonstrate that "he was in fact incompetent to succeed on [his ineffective assistance of counsel] theory. He need only show that counsel's failure to pursue what should have been reasonable doubts as to his competency was prejudicial to him." *McLaughlin v. Royster,* 346 F.Supp. 297, 310 (E.D.Va.1972).

If the district court determines on remand that counsel could not have changed the outcome of the competency hearing, reversal is not required because the effects of the violation would be effectively confined to the competency hearing—that is, they would not serve to contaminate the entire criminal proceeding. If, however, the district court determines that the competency hearing could have come out differently absent the Sixth Amendment violation, reversal is required because the violation under this determination would serve to contaminate the entire criminal proceeding, including appellant's subsequent waiver of her right to counsel at trial and the trial itself.

In making this determination, the district court should inquire into whether counsel could have made certain tactical decisions (such as retaining a second forensic expert to evaluate appellant) or made certain arguments (such as questioning Dr. Shadduck's report on grounds that it was based solely on his observations of appellant rather than on formal testing) which could have changed the outcome of the competency hearing. The district court should also keep in mind that appellant had a right to counsel at her competency hearing but that she also had a right to counsel for the period between her arraignment hearing and her competency hearing. Although a defendant does not have the right to have counsel present during a psychiatric examination, *see Byers,* 740 F.2d. at 1119, a defendant does have a right to counsel when faced with law-related choices with respect to this examination. *Id.* A defendant thus has a right to counsel before a psychiatric exam; for example, when making the "significant decision of whether to submit to the examination and to what end the psychiatrist's findings could be employed." *Estelle,* 451 U.S. at 471, 101 S.Ct. 1866. Accordingly, the district court should include in its inquiry what impact counsel could have had on appellant's decision not to submit to formal psychological testing, considering, for example, the fact that Dr. Shadduck noted that he could not definitively conclude that appellant was not suffering from a bipolar disorder because appellant had refused to participate in formal testing.

## B. *Validity of Appellant's Waiver of Right to Counsel at Trial*

Appellant argues that the district court failed to advise her of the dangers and disadvantages of self-representation and thus, apart from any question of her competency to stand trial, that her waiver of counsel was invalid and she was denied her Sixth Amendment right to counsel at trial. The government concedes that the district court did not engage in the ideal colloquy with appellant; however, the government argues that appellant's waiver was nevertheless valid because the record as a whole indicates that appellant's waiver of counsel was knowing and intelligent.

The Supreme Court in *Faretta* held that a defendant has a constitutional right to self-representation but that, in order to represent himself, a defendant must "knowingly and intelligently" forgo the benefits traditionally associated with the right to counsel:

> Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that "he knows what he is doing and his choice is made with eyes open."

422 U.S. at 835, 95 S.Ct. 2525 (1975) (quoting *Adams v. United States ex rel. McCann*, 317 U.S. at 279, 63 S.Ct. 236). In *United States v. Bailey*, 675 F.2d 1292 (D.C.Cir.1982), this court enjoined trial judges in future cases involving defendants' invocations of their right to self-representation to "mak[e] clear on the record the awareness by defendants of the dangers and disadvantages of self-representation as to which the Supreme Court in

*Faretta* has voiced its concern." *Id.* at 1300. However, the *Bailey* Court did not find that a failure to make such a finding clear on the record required reversal where the record as a whole indicated that the defendant's waiver of his right to counsel was knowing and voluntary.[7] In finding that the record as a whole indicated a knowing and voluntary waiver, the *Bailey* Court took note of the fact that the defendant "consciously and emphatically wanted to represent himself"; that there was no possibility that the defendant "was misled or coerced into waiving his right to counsel"; that the defendant had studied law at Leavenworth for three years; and that the defendant "had previously been convicted of a felony, a factor which necessarily indicates that he had some knowledge and understanding of the relevant law and courtroom procedure." *Id.* at 1301–02.

Under the facts of this case, we agree with the government that the record as a whole establishes that appellant's waiver of counsel was knowing, intelligent, and voluntary (except of course insofar as she may have been lacking competency).[8] First, appellant consistently and emphatically expressed her desire to represent herself at trial. Her pretrial motion requesting removal of appointed counsel clearly demonstrated that she was aware that she had a Sixth Amendment right to counsel and that she wished to waive this right. For example, appellant noted in her motion that she was "aware of the implications and responsibilities involved that accompany being represented in propria persona and waive[d] the right to have supportive counsel present or involved at this time." J.A., Ex. 3.

Furthermore, as the district court was aware, at the time of the January 16, 1997

---

7. In *Godinez v. Moran*, 509 U.S. 389, 113 S.Ct. 2680, 125 L.Ed.2d 321 (1993), the Supreme Court added the word "voluntary" to the inquiry of whether a waiver is "knowing" and "intelligent." *Id.* at 400, 402, 113 S.Ct. 2680.

8. We agree with appellant that the district court failed to engage appellant in a sustained colloquy concerning the dangers and disadvantages of self-representation. The district court did state at appellant's arraignment hearing that, "If I were charged with a serious crime like this, as you are, I would not represent myself. I would

want independent advice to assist me." 11/1/96 Tr. at 4. However, at the January 16, 1997 competency hearing—where the district court actually found that appellant could represent herself at trial—the district court did not re-enter this conversation with appellant and did not make clear on the record that appellant was aware of the dangers and disadvantages of self-representation. Nevertheless, we find that the district court's failure to do so does not require reversal here because the record otherwise establishes a knowing, intelligent, and voluntary waiver.

hearing, appellant was a 39–year old nurse who had previously worked in complex areas of nursing such as neonatal intensive care, acute care, and psychiatric care. Indeed, appellant argued this very point at her arraignment hearing: "I'm an ICU nurse, competent. I take care of people on a [sic] every day basis ... I have to perform competently each and every minute that I work." 11/1/96 Tr. at 21.

Moreover, appellant was relatively well-versed in the law. First, appellant had litigated her civil suit in California *pro se.* Additionally, appellant did a great deal of self-study on criminal law subsequent to her arrest, as appellant explained to the district court at her competency hearing: "But I did spend every free moment that I was allowed off the unit in Carswell in the law library. I did go through the entire two volumes of criminal trial manual that is in D.C. I did go entirely through the Federal Rules of Criminal Procedure." 1/16/97 Tr. at 9. Dr. Shadduck confirmed as well that appellant "spent a significant portion of her stay at [Carswell] doing research in the law library" and that she "clearly demonstrate[d] an in depth understanding of the legal process...." Appellant Br., Attach. C at 4, 6.

Finally, there is absolutely no evidence in the record to suggest that appellant was in any way coerced or misled into waiving her right to counsel. In sum, we conclude, as did the court in *Bailey,* that "[o]n the record before us in this case, [appellant's] claim on appeal of the invalidity of the trial judge's grant of [her] request is not persuasive as to any necessity to reverse [her] conviction." 675 F.2d at 1302.

### C. *Duplicity of Charges*

■ Appellant argues that both counts of the indictment are duplicitous and that the district court therefore erred in failing to dismiss the indictment as was requested by appellant through pretrial motion. The government argues that the indictment is not duplicitous because it properly charged a series of events as a single count because the events constitute a common scheme to threaten. We agree with the government that the acts charged constitute a common scheme to threaten and therefore that the district court did not err in failing to dismiss the indictment as duplicitous.

■ "Duplicity" is the joining in a single count of two or more distinct and separate offenses. *See United States v. Mangieri,* 694 F.2d 1270, 1281 (D.C.Cir.1982). Appellant is correct in noting that the two counts in the indictment charged numerous allegedly threatening acts (*i.e.,* different statements, letters, voicemail messages). However, several acts may be charged in a single count if the acts "represent a single, continuing scheme that occurred within a short period of time and that involved the same defendant." *United States v. Alsobrook,* 620 F.2d 139, 142 (6th Cir.1980).

Appellant argues that the acts charged did not occur within a short period of time because the acts spanned the period from February to August of 1996. We do not believe, however, that six months is too long a period for acts charged in an indictment to constitute a single, continuing scheme. The various acts charged all involved appellant and all related to appellant's apparent frustration with the Supreme Court's denial of her appeals. Appellant's argument with respect to the duplicity rule would require the government to file a separate count for each allegedly threatening statement, letter, and voicemail message, "thereby producing the danger of inappropriate multiple punishments for a single criminal episode." *Mangieri,* 694 F.2d at 1282. We do not find the indictment in this case to be duplicitous.

### D. *Unanimity Instruction*

■ Appellant argues that the district court erred in failing to instruct the jury that it had unanimously to find that at least one of the acts charged in each of the counts constituted a threat to assault. Specifically, appellant argues the district court erred in failing to give a special jury instruction to the effect that the jurors must be unanimous as to which act(s) they find the defendant guilty. We have previously urged trial courts to employ a special unanimity instruction when an indictment charges more than one act. *See Mangieri,* 694 F.2d at 1281; *United*

*States v. Hubbard,* 889 F.2d 277, 278 (D.C.Cir.1989). However, appellant failed to request a special unanimity instruction; consequently, we review the district court's failure to do so, *sua sponte,* for plain error. *See Hubbard,* 889 F.2d at 278. We cannot conclude that it was plain error not to give a special unanimity instruction in this case. In the context of the entire indictment and the trial, we conclude that the general unanimity instruction given by the district court sufficed to instruct the conscientious juror that she must agree with the other jurors on what act(s) constituted a threat to assault. *See Mangieri,* 694 F.2d at 1281.

### E. *Downward Departure for Diminished Capacity*

Appellant argues that the district court erred because it failed to depart downward from the applicable sentencing range under U.S.S.G. § 5K2.13 ("[A court may depart downward] to reflect the extent to which reduced mental capacity contributed to the commission of the offense."). However, appellant failed to request a downward departure under section 5K2.13. Accordingly, we review the district court's failure, *sua sponte,* to depart downward on the basis of appellant's diminished capacity under plain error. *See United States v. Studevent,* 116 F.3d 1559, 1564 (D.C.Cir.1997). Appellate review in the context of downward departures is limited to a determination of "whether the sentencing judge misunderstood the scope of its authority to depart." *United States v. Washington,* 106 F.3d 983, 1015 (D.C.Cir. 1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 446, 139 L.Ed.2d 382 (1997). There is no indication that the district court misunderstood its authority to depart under section 5K2.13. The court was not asked to depart under section 5K2.13 and its failure, *sua sponte,* to do so is not plain error.

For the foregoing reasons, we remand the case for an evidentiary hearing to determine whether counsel could have made a difference in the outcome of appellant's competency hearing. If the district court determines that counsel could have made a difference,

appellant's conviction and sentence are vacated. Otherwise, they are affirmed.

*So ordered.*