# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued November 10, 2009        Decided July 20, 2010

No. 08-3060

UNITED STATES OF AMERICA,
APPELLEE

v.

MICHAEL ANTHONY BATTLE,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 1:05-cr-00234-RMU-1)

*Edward C. Sussman*, appointed by the court, argued the cause and filed the brief for appellant.

*Anne Y. Park*, Assistant U.S. Attorney, argued the cause for appellee. With her on the brief were *Jeffrey A. Taylor*, U.S. Attorney at the time the brief was filed, and *Roy W. McLeese III*, Assistant U.S. Attorney.

Before: GARLAND, *Circuit Judge*, and WILLIAMS and RANDOLPH, *Senior Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* GARLAND.

GARLAND, *Circuit Judge*:  Michael Anthony Battle raises three challenges to his convictions for distributing crack cocaine.  He contends that the district court erred in finding him competent to stand trial, that there was insufficient evidence to support the jury's verdict that the drugs he sold were crack, and that there was insufficient evidence that the sale took place within 1000 feet of a school.  We reject all three contentions.  We agree with both parties, however, that Battle's convictions on separate counts of distributing crack cocaine and of distributing the same drugs within 1000 feet of a school merge.  We therefore remand for the district court to vacate the judgment on the former count.

I

On June 16, 2005, a grand jury returned a seven-count indictment charging Battle with, inter alia, distributing 50 grams or more of cocaine base, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(iii), and distributing 50 grams or more of cocaine base within 1000 feet of a school, in violation of 21 U.S.C. § 860(a).[1]  At a status hearing on March 24, 2006, Battle's attorney requested a preliminary competency screening.  After interviewing Battle, Dr. Robert Benedetti, Chief of Forensic Legal Services at St. Elizabeth's Hospital, concluded that Battle was "competent to stand trial because mental health factors do not substantially impair his capacity to have a factual and rational understanding of the proceedings against him and to properly assist counsel with the preparation of his defense." Competency Report of Dr. Robert Benedetti at 2-3 (Mar. 27, 2006).

---

[1]The government subsequently dismissed three of the counts, which charged him with unlawful use of a telephone to facilitate his distribution of narcotics, in violation of 21 U.S.C. § 843(b).

Defense counsel then requested a 30-day psychological evaluation, which the court ordered pursuant to 18 U.S.C. § 4241. Battle was admitted to the Federal Medical Center (FMC) in Devens, Massachusetts, where he was evaluated from May 9 to June 8, 2006. During that period, forensic psychologist Dr. Shawn Channell and FMC personnel working with him conducted behavioral observations, clinical interviews, physical examinations, and psychological testing of the defendant. Dr. Channell administered a psychological test called the Minnesota Multiphasic Personality Inventory: Second Edition (MMPI-2), as well as another called the Evaluation of Competency to Stand Trial: Revised (ECST-R), which assesses a defendant's understanding of proceedings and ability to work with counsel. He also determined that Battle did not have a documented history of mental illness.

At the conclusion of the month-long evaluation -- and following interviews with defense counsel, the prosecutor, and Battle's mother -- Dr. Channell diagnosed Battle with Adult Antisocial Behavior and alcohol and cannabis abuse. Like Dr. Benedetti, however, he concluded that Battle was competent to stand trial because "there is no present objective evidence to indicate [that Battle] suffers from a mental disorder which would impair his ability to understand the nature and consequences of the court proceedings against him, or impair his ability to properly assist counsel in his defense." Competency Report of Dr. Shawn Channell at 8 (June 28, 2006).

Following Battle's evaluation at FMC, defense counsel retained Dr. Lanning Moldauer, a clinical psychologist, to conduct an independent psychological evaluation. Dr. Moldauer interviewed Battle once, spoke by telephone with his mother for thirty minutes, and observed a meeting between Battle and his attorney. Thereafter, Moldauer concluded that Battle was not competent to stand trial because he "experiences significant

grandiose delusions with a strong religious basis" that are "almost certainly psychotic in nature, and . . . preclude[] his working with his attorney effectively." Report of Dr. Lanning Moldauer at 3-4 (Nov. 21, 2006).

The defense then requested a competency hearing pursuant to 18 U.S.C. § 4247(d), and the court granted the request. In light of Dr. Moldauer's conclusion, the court granted the government's motion for re-evaluation of the defendant. During the second observation period, which took place at FMC Devens from February 7 to March 9, 2007, Dr. Channell conducted additional psychological tests, including a second MMPI-2. At the end of the period, Dr. Channell issued another report, again finding Battle competent. Although "Mr. Battle's personality characteristics have, and are likely to continue, to result in significant difficulty working with any attorney," Channell said, his behavior was "volitional" and did "not meet diagnostic criteria for Delusional Disorder." Report of Dr. Channell at 4, 9 (Mar. 21, 2007). After Dr. Channell issued his report, Dr. Moldauer interviewed Battle for a second time.

The district court held competency hearings on June 12 and September 6, 2007. Consistent with their reports, Dr. Channell and Dr. Benedetti testified that Battle was competent to stand trial. Dr. Moldauer testified that he was not. Thereafter, the district court found that the government had proved "by a preponderance of the evidence that the defendant presently possesses competence and . . . has the capacity to stand trial." *United States v. Battle*, No. 05-0234, Mem. Op. at 9, 11-12 (D.D.C. Sept. 20, 2007).

Trial commenced on April 8, 2008. Metropolitan Police Department Officer Darrick Wallace testified that, acting in an undercover capacity, he had called Battle on March 24, 2005, and arranged to "purchas[e] 62 grams of crack cocaine." Trial

Tr. 41-42 (Apr. 8, 2008). The two met inside Wallace's undercover automobile, which he parked in an alley near the 100 block of Hamilton Street, N.W. Inside the car -- and captured on video surveillance -- Battle sold the drugs to Wallace.

Three witnesses testified concerning the nature of the narcotics that Battle sold to Officer Wallace. Wallace described the drugs he purchased as "a chunky substance." *Id.* at 43. Detective Eric Fenton, the lead officer on the case and the person to whom Wallace handed the drugs after the purchase, testified that they "were two large, . . . chunky, white rock substances." *Id.* at 119. And a Drug Enforcement Administration (DEA) chemist testified that the drugs were an "off white, chunky material," weighing 60.3 grams and containing cocaine base with a purity of 74 percent. Trial Tr. 26-27 (Apr. 9, 2008). In addition, the parties agreed on the following stipulation:

> There are two types of cocaine used in the District of Columbia: Powder and cocaine base, also known as crack. Crack comes in a hard, rock-like form. Crack is typically ingested into the body by smoking it. Wholesale amounts of crack are broken down into smaller and smaller amounts until the drug is typically packaged into one or two useable amounts for street sale.
> . . . .
>
> A "62" is approximately 62 grams of crack. This is a standard amount for a mid-level or wholesale dealer, . . . although the actual weight of a "62" may be slightly more or less than 62 grams.

*Id.* at 47.

6

Detective Fenton also testified concerning the distance between the drug transaction and a local elementary school. He recounted that, in late April 2005, he had returned to the scene of the March 24 transaction to measure the distance from the location of Battle's drug sale to Cuno Rudolph Elementary School. Using a measuring wheel, Fenton measured 950 feet from the place where Officer Wallace had told him the transaction took place to the school. The government also entered into evidence a photograph of Fenton standing in front of the school holding the measuring wheel, a separate photograph of the wheel itself indicating a 950-foot distance, and an aerial map of the school and area.

Upon cross-examination, Detective Fenton could not recall whether, on the day he made the measurement, Officer Wallace had accompanied him to the location of the drug sale or had merely described it to him. Defense counsel also questioned Detective Fenton about the precise point in the alley at which he began his measurement and asked him to mark that location on a map. Following that day's testimony, the prosecutor directed Fenton to return to the scene with Officer Wallace. The next day the government recalled Fenton, who testified that -- during the return trip -- Wallace confirmed that the point at which Fenton had started measuring was the actual location at which Wallace had bought the drugs from Battle.[2] Fenton also testified that he had marked the wrong location on the map the previous day.

The defense called one witness, a private fingerprint consultant, who testified that the plastic bags that contained the drugs purchased by Officer Wallace were of a kind that could

---

[2]Battle did not raise a hearsay objection to Fenton's testimony and does not assert one here.

have retained latent fingerprints. (The government had not proffered any fingerprint evidence.)

The jury convicted Battle on two counts relating to the March 24, 2005 drug transaction: distribution of 50 grams or more of cocaine base, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(A)(iii) (Count 4); and distribution of 50 grams or more of cocaine base within 1000 feet of a school, in violation of 21 U.S.C. § 860(a) (Count 5).[3] The judge sentenced Battle to 135 months on each count, to run concurrently.

Battle raises three issues on appeal. First, he contends that the district court erred in finding him competent to stand trial. Second, he argues that there was insufficient evidence to support the jury's verdict that the drugs he sold to Officer Wallace were "cocaine base" within the meaning of § 841(b)(1)(A)(iii). Finally, he maintains that there was insufficient evidence that the sale took place within 1000 feet of a school, within the meaning of 21 U.S.C. § 860(a). We consider these arguments below.

II

"[T]he Constitution does not permit trial of an individual who lacks 'mental competency.'" *Indiana v. Edwards*, 128 S. Ct. 2379, 2383 (2008); *see* 18 U.S.C. § 4241(d). The Supreme Court has "define[d] the competency standard as including both (1) 'whether' the defendant has 'a rational as well as factual understanding of the proceedings against him' and (2) whether the defendant 'has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding.'"

---

[3]The jury found Battle not guilty on the remaining counts, which charged him with distributing 50 grams or more of cocaine base on two other days.

*Edwards*, 128 S. Ct. at 2383 (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960)) (emphasis omitted); *see Drope v. Missouri*, 420 U.S. 162, 171 (1975); 18 U.S.C. § 4241(d). This court will uphold a district court's competency determination "unless it is clearly arbitrary or erroneous." *United States v. Caldwell*, 543 F.2d 1333, 1349 (D.C. Cir. 1975); *see United States v. Klat*, 213 F.3d 697, 702 (D.C. Cir. 2000).

Battle concedes that he had a rational and factual understanding of the proceedings. Appellant's Br. 24. He contests only his "present ability to consult with his attorney." *Id.* In our view, the district court's explanation for why it found Battle to have that ability was neither arbitrary nor clearly erroneous.

First, Dr. Channell testified that he did not detect any indication that Battle suffered from delusional thinking -- whether "with a . . . religious basis" or otherwise -- during his two extended stays at FMC Devens. *See* Competency Hearing Tr. 170-71 (Sept. 6, 2007). The district court was reasonable in crediting Channell's testimony, and in rejecting Moldauer's contrary conclusion. Mem. Op. at 10. As the court noted, Channell had significant time to observe Battle, who was under his custody for two month-long observation periods. By contrast, Dr. Moldauer saw Battle on only three days: twice when he interviewed Battle and once when he observed a meeting between Battle and his counsel.

Second, Dr. Channell testified, and the court noted, that Battle had no known history of mental illness or treatment. Although Dr. Moldauer was of the opinion that mental health history is "[n]ot terribly" important in assessing competency, Competency Hearing Tr. 40 (Sept. 6, 2007), Dr. Channell considered it to be probative, *see id*. at 143. The court was well within its discretion to do the same.

Third, Dr. Channell testified, without contradiction, that Battle's score on a standard competency test -- the ECST-R -- raised little or no concern regarding his ability to understand the proceedings and assist his attorney. Although the parties did dispute the significance of the MMPI-2 scores, particularly the results of the second administration of that test, the district court was not unreasonable in agreeing with Channell's decision not to credit those results in light of the large number of questions to which Battle answered both "yes" and "no." The court was not alone in that conclusion: when Dr. Moldauer contacted the scoring service about the results, the service advised that it would not provide an interpretive report because it considered the test "invalid" due to the large number of double-answered responses. Competency Hearing Tr. 61-62 (June 12, 2007).

Fourth, although Dr. Channell "confirm[ed] Dr. Moldauer's and defense counsel's assessment of [Battle's] recalcitrant and irritable temperament," Mem. Op. at 10, Channell viewed that behavior as volitional, the result of a conscious choice rather than the product of a mental defect Battle could not control. The relevant legal question is not whether appellant will "assist properly in his defense," but whether "he [is] *able* to do" so. *United States v. Vachon*, 869 F.2d 653, 655 (1st Cir. 1989) (internal quotation marks omitted). As the district court correctly noted, "'uncooperativeness with one's counsel does not alone prove an inability to communicate.'" Mem. Op. at 10 (quoting *Caldwell*, 543 F.2d at 1349 n.70). And the court was well supported in accepting Dr. Channell's "conclu[sion] that the defendant *can* participate in his defense." *Id.* (emphasis added).

Finally, the district court found "by its own observations that the defendant's demeanor was controlled, responsive and appropriate to the testimony and arguments heard during the competency hearing." *Id.* at 9. This, the court said, was further

evidence that Battle could control his behavior. *Id.* at 11. Because "evidence of a defendant's . . . demeanor at trial . . . [is] relevant" in determining competency, *Drope*, 420 U.S. at 180, the court was justified in relying on its own observations to confirm Dr. Channell's views.

In *United States v. Caldwell*, we concluded our analysis of a defendant's competency challenge as follows: "In sum, the evidence was merely contradicted, and the judge found the Government's evidence more persuasive." 543 F.2d at 1349. We reach the same conclusion here and, as in *Caldwell*, reject the defendant's challenge.

## III

Battle also raises two challenges to the sufficiency of the evidence supporting his convictions. Our review is highly circumscribed. "[W]e must accept the jury's guilty verdict if we conclude that 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Andrews*, 532 F.3d 900, 903 n.1 (D.C. Cir. 2008) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "In making that determination, the prosecution's evidence is to be viewed in the light most favorable to the government, drawing no distinction between direct and circumstantial evidence, and giving full play to the right of the jury to determine credibility, weigh the evidence and draw justifiable inferences of fact." *Id.* (internal quotation marks omitted).

## A

Battle first challenges the sufficiency of the evidence that he sold "cocaine base" within the meaning of 21 U.S.C. § 841(b)(1)(A)(iii). As this court has explained, "[u]nder § 841, a 'certain quantity of "cocaine base" will trigger much stiffer

penalties than an equivalent quantity of powdered cocaine.'" *United States v. Pettiford*, 517 F.3d 584, 592 (D.C. Cir. 2008) (quoting *United States v. Powell*, 502 F.3d 147, 148 n.1 (D.C. Cir. 2007)).  We have "held that, to 'uphold the higher penalties that § 841 prescribes for crimes involving "cocaine base,"' the government must prove that the kind of cocaine base seized was either 'smokable cocaine base or crack cocaine.'"  *Id.* (quoting *United States v. Johnson*, 437 F.3d 69, 71 (D.C. Cir. 2006)).  "[T]he government," however, "may prove that cocaine base is crack cocaine in a variety of ways."  *Id.* at 593.

In *United States v. Lawrence*, 471 F.3d 135 (D.C. Cir. 2006), the government produced the following evidence:

> [i] that the substance in question contained cocaine base, [ii] that at the time of the purchase the drugs comprised 'a large white rock substance,' and [iii] that the sale of the drugs followed conventional practices for the sale of crack cocaine.  In addition, [iv] the undercover officers who purchased the drugs from [defendant] testified that he provided these drugs in response to their requests to buy crack.

*Id.* at 139.  Such evidence, we held, was sufficient to support a verdict of guilty under 21 U.S.C. § 841(b) for distribution of crack cocaine.

The evidence in this case is indistinguishable.  The DEA chemist testified that the substance at issue contained cocaine base, with a purity of 74 percent.  She also testified that it was an "off white, chunky material," Trial Tr. 26 (Apr. 9, 2008), while the officers described it as "a chunky substance" and as "chunky, white rock," Trial Tr. 43, 119 (Apr. 8, 2008).  Testimony and the parties' stipulation established that the transaction followed conventional practices for the sale of crack:

it was packaged in a standard amount for a mid-level or wholesale dealer, an amount known as a "62" that weighed approximately 62 grams.   Finally, as in *Lawrence*, the undercover officer testified that Battle provided the drugs in response to his request for "62 grams of crack."  *Id.* at 42.[4]

As the facts of Battle's case are indistinguishable from those in *Lawrence*, we reject his challenge to the sufficiency of the evidence that he sold crack cocaine.

B

Battle also challenges the sufficiency of the evidence that the sale occurred within 1000 feet of a school.  Section 860(a) imposes enhanced penalties on any person "distributing . . . a controlled substance . . . within one thousand feet of[] the real property comprising a public or private elementary . . . or secondary school."  21 U.S.C. § 860(a).  The government must prove that the distribution took place within 1000 feet of "an actual" or "operating" school, "not just a school building that is no longer (or not yet) in use as a school."  *United States v. Hawkins*, 104 F.3d 437, 440-41 (D.C. Cir. 1997).

1.  Battle's first contention is that the government failed to introduce sufficient evidence for a jury to conclude that the relevant distance was in fact within 1000 feet.  If believed, Detective Fenton's testimony certainly provided sufficient evidence:  he testified that he used a measuring wheel to

---

[4]Although Battle claims that the government's failure to introduce evidence that the drugs were "smokable" is fatal, "[o]ur cases make clear . . . that 'evidence about the substance's smokeability' is not required to sustain a finding that it is crack." *United States v. Johnson*, 519 F.3d 478, 486 (D.C. Cir. 2008) (quoting *Johnson*, 437 F.3d at 75).

measure the distance from the location of the drug transaction to the front of the school, and that the distance was 950 feet. Battle's real contention is that the jury should not have believed Fenton's testimony because, in his initial testimony, he marked the wrong location on the map and could not recall whether Officer Wallace had accompanied him to the alley where Wallace had purchased the narcotics. Although Fenton corrected both deficiencies during the second day of his testimony, Battle views those corrections as not credible. But "assessment of witness credibility is a job for the jury rather than this court," *United States v. Clark*, 184 F.3d 858, 865 (D.C. Cir. 1999), and the jury had ample opportunity to evaluate Fenton's testimony both times he took the stand.

Citing *United States v. Applewhite*, 72 F.3d 140 (D.C. Cir. 1995), Battle further suggests that the "relatively small discrepancy" between the statutory requirement of 1000 feet and Fenton's 950-foot measurement renders Fenton's testimony insufficient. Appellant's Br. 32-33. But the problem in *Applewhite* was that the government had "measured only the distance between the school and a point short of the location of the drugs," and had presented no evidence from which the jury could "determine the omitted distance." 72 F.3d at 144. Here, by contrast, there was no omitted distance: Detective Fenton testified that his starting point was where Officer Wallace told him the transaction took place. *See* Trial Tr. 142 (Apr. 8, 2008).

2. Battle's second contention is that the government "proved nothing more than that the building had at some point likely been a functioning elementary school." Appellant's Br. 34. The government's evidence, however, was sufficient under our case law.

Detective Fenton testified that he measured the distance to the "Cuno Rudolph Elementary School." Trial Tr. 121 (Apr. 8,

2008). He repeatedly referred to the end-point of his measurement as "Rudolph Elementary School" and "the school." *Id.* at 120, 121, 124, 125; Trial Tr. 54 (Apr. 9, 2008). In addition, the government introduced a photograph of Detective Fenton standing in front of the school with the measuring wheel -- a photo that showed the school's fence, an event sign, and a child exiting the building. Gov't Ex. 8; *see* Trial Tr. 120 (Apr. 8, 2008).

In *Hawkins*, this court found it sufficient that an "Officer . . . testified that [the defendant's] drug offenses occurred within 1,000 feet of the 'Garnett-Patterson Junior High School[,]' . . . 'a middle school.'" 104 F.3d at 441. "[A] reasonable juror," we held, "could take the [officer's use of the] word 'school' to refer to an operating school." *Id.* Likewise, in *United States v. Singletary*, 69 F. App'x 468 (D.C. Cir. 2003), we held that an officer's testimony "that the offense occurred within 666 feet of the 'Raymond Elementary School,' which the officer also referred to simply as 'the elementary school,' [was] sufficient to permit a reasonable juror to conclude that the offense occurred within 1,000 feet of an operating school." *Id.* at 469. As the evidence in *Hawkins* and *Singletary* is on all fours with the evidence in this case, we reach the same result: a reasonable juror could have found the defendant guilty beyond a reasonable doubt of distributing narcotics within 1000 feet of an operating school.

IV

Although we have concluded that the government offered sufficient evidence to support Battle's convictions both for distributing 50 grams or more of cocaine base under 21 U.S.C. § 841 (Count 4), and for distributing the same drugs within 1000 feet of an elementary school under 21 U.S.C. § 860(a) (Count 5), the government commendably points out that there is still a

problem in sustaining both convictions. Appellee's Br. 52 n.25. As the government observes, under *United States v. Law*, the two convictions must merge because conviction on both counts would violate the Double Jeopardy Clause. 528 F.3d 888, 909 (D.C. Cir. 2008). Accordingly, we accept the government's suggestion to direct the district court to vacate the § 841 conviction (Count 4). Because the court sentenced Battle to the same, concurrent terms of imprisonment for the § 841 and § 860(a) convictions, resentencing is unnecessary. *See United States v. Baylor*, 97 F.3d 542, 548 (D.C. Cir. 1996); *United States v. Holiday*, 482 F.2d 729, 731 n.6 (D.C. Cir. 1973).

V

For the foregoing reasons, we affirm the judgment of the district court in most respects, but remand the case for vacation of Count 4 of the original indictment.

*So ordered.*