PILLARD, Circuit Judge,
concurring:
The legal system is not functioning at its best when an uncounseled man serves six years in prison for civil contempt of court. Such an extraordinary period of imprisonment for contempt is especially troubling where, as here, the contemnor was evidently unable to afford a lawyer. The district court assumed when it held Barry Gewin in contempt in 2007 that he had a right to court-appointed counsel, but this case is before us because the court did not conduct a colloquy on the record at that time. It was not until 2011 that a waiver of that right was clear on the record.
As the court aptly explains, any 2007 deprivation of the right to counsel that Gewin may have suffered is beyond our power to remedy because he did not raise or appeal the lack of appointed counsel until now. Gewin here appeals from the 2012 order continuing his contempt. By the time the district judge entered that order, she had appointed the Federal Public Defender himself as advisory counsel. The Federal Public Defender had met with Gewin and made both concrete and ongoing offers of full representation, which *86 Gewin declined. I concur in the court’s opinion because I conclude that, in the circumstances of this case, the Federal Public Defender’s in-person proffer of full and free representation, with the court’s encouragement, and Gewin’s refusal of that offer validly waived any right to counsel that Gewin may have had relating to the order under review.[1]
I write separately to clarify two points. First, to the extent that there is any suggestion in the court’s opinion that Gewin effectively waived his right to counsel before the Federal Public Defender appeared and Gewin refused his representation, I disagree that waiver could be accomplished by the limited and unclear communications on the record leading up to the Defender’s appearance. Second, given the course of the contempt proceedings in the district court, it bears emphasis that, where a due process right to counsel attaches, a prompt and explicit colloquy on the record ordinarily is required before a court may find a valid waiver of that right.
One hopes an extended contempt imposed on an uncounseled person, without contemporaneous waiver of a right to representation, is exceedingly rare. But situations that prompt judges to use our contempt power tend to be fraught. Disobedient and disrespectful litigants understandably raise the risk of confusion and error. It is thus especially important to follow standard “best practices,” such as the Civil Contempt Procedure set out in the Federal Judicial Center’s Benchbook for U.S. District Court Judges, before imprisoning an uncounseled, indigent person for contempt of court.
Gewin faced civil contempt because he did not pay the fine and restitution he owed under his felony sentence for securities and wire fraud and conspiracy. At sentencing, all of his identifiable assets totaled approximately $650,000, and the district court ordered him immediately to pay the full amount towards his $2.4 million fine and restitution obligation. Owing more than his known assets to the court, Gewin presumptively had no funds available to pay a lawyer during his subsequent civil contempt proceeding. An indigent civil contemnor facing a deprivation of his physical liberty is not automatically entitled to court-appointed counsel. But, the factors that tipped the due process analysis against appointing counsel in Turner v. Rogers, — U.S. -, 131 S.Ct. 2507, 180 L.Ed.2d 452 (2011), favored it here, as the district court seems to have assumed. The district judge accordingly told Gewin at an April 2007 hearing that, if she had to resort to the contempt power to induce him to pay his fine and restitution, he could get his own lawyer or she would “appoint somebody since there are ramifications for you.” Supp’l J.A. at 287. The court appears to have assumed, reasonably enough, that Gewin was indigent, given that the sentencing obligation of $2.4 million far exceeded the funds in his identified accounts.
Five months later, when Gewin failed to comply with the order to pay, the district judge held him in contempt. At the Sep *87 tember 2007 contempt hearing, the judge did not follow up on her comment at the April hearing that she would ensure that Gewin had counsel. She did not inform Gewin on the record whether he had a right to counsel and, if so, that waiving it carried serious risks. She did not record any knowing and intelligent waiver. Instead, communications between the court and Gewin about any right to counsel occurred at later conferences or hearings, were not fully explicit, and spread over years, making it hard to determine what Gewin knew and what he intended regarding his right to counsel. Gewin remained in prison for contempt for six years.
It was not until 2011 that the district judge summoned the Federal Public Defender to meet and confer privately with Gewin and offer his assistance. The Defender offered to represent Gewin, and he proposed filing a motion to purge the contempt. Gewin declined the Defender’s offer of free and expert legal representation.
In 2013, during the pendency of this appeal, the government acknowledged that the contempt order had lost any coercive force and so should end. Gewin has thus only recently begun to serve his sentence of incarceration — a sentence that, but for the contempt, would now be complete.[2]
The district judge assumed without deciding that due process required her to appoint counsel — or to determine on the record that Gewin waived any such right— before she held him in contempt. We, too, dispose of the appeal without deciding that issue. Cf. Appellee Br. at 33 (the government assumes that, “[h]ad Gewin sought court-appointed counsel” in October 2007, when he wrote to the court that he had “no funds, or so-called ‘money’ in any accounts,” appointed counsel “would no doubt have been supplied”). Those assumptions that a right to counsel may have attached in these circumstances are at least reasonable.
Potential civil contemnors facing incarceration have a due process right to appointed counsel, subject to the Supreme Court’s analysis in Turner. See generally Walker v. McLain, 768 F.2d 1181, 1185 (10th Cir.1985) (collecting pr e-Tumer cases holding that a civil contemnor had a due process right to counsel). Before Turner, the Court had recognized in certain contexts “the presumption that an indigent litigant has a right to appointed counsel,” limited to eases in which the litigant “may be deprived of his physical liberty.” 131 S.Ct. at 2516 (internal quotation marks omitted). Turner found that presumption rebutted in the context of a state civil contempt proceeding for failure to pay child support. Id. at 2520. In doing so, the Court identified an exception to, but *88 did not generally eliminate, the due process right to counsel. See id. (holding that Turner’s due process rights were violated because he received “neither counsel nor the benefit of alternative procedures”). Turner reaffirmed that, when determining whether due process requires appointment of counsel, a court must consider the factors set forth in Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). See Turner, 131 S.Ct. at 2517-18. Those factors include (1) the nature of the private interest affected, (2) the risk of an erroneous deprivation of that interest without appointed counsel, and (3) the nature and magnitude of any countervailing interests. Id.
The Mathews factors suggest why it was reasonable to assume that Gewin had a due process right to appointed counsel:
First, as in Turner, the “private interest that [was] affected” in Gewin’s contempt proceeding — the “loss of personal liberty through imprisonment” — “argues strongly for the right to counsel.” See id. at 2518 (internal quotation marks omitted). But, unlike Turner, who was facing a maximum term of imprisonment of up to a year, no statute limited the period Gewin could be held, and he ended up serving six years— an extraordinary period of civil contempt.
Second, “[g]iven the importance of the interest at stake, it is obviously important to assure accurate decisionmaking” with respect to Gewin’s ability to pay the restitution and fíne, see id., and counsel most likely would have improved the accuracy of decisionmaking here. Here, as in Turner, it was important to make an accurate determination of “the key ‘ability to pay’ question” that supports continued confinement for civil contempt. Id.
Third, the three subsidiary considerations that argued against requiring the state to provide counsel in Turner’s civil contempt proceeding point in the other direction here. Unlike in Turner, the question at issue in Gewin’s contempt proceeding was not “straightforward.” Compare id. at 2519. As our opinion observes, Gewin was caught in a Catch-22. Op. at 82 n. 2. Gewin very well may have spent the funds identified in the court’s sentencing order. If so, he could have come forward with that evidence to defend against civil contempt, but in doing so he would have exposed himself to criminal contempt or prosecution on another ground for dissipating funds in violation of the court’s order. Id. Alternatively, if he avoided criminal jeopardy by declining to present that evidence to the court, he would remain in contempt, with no apparent end to his incarceration. The hazards surrounding those choices underscore that Gewin’s circumstances presented legal issues far more complex than those characterized in Turner as simple enough that an indigent could navigate them effectively on his own, aided only by a system of simple forms and follow-up questioning. See Turner, 131 S.Ct. at 2519; see also United States v. Bobart Travel Agency, Inc., 699 F.2d 618, 619-20 (2d Cir.1983) (“To guide a client between the Scylla of contempt and the Charybdis of waiving his Fifth Amendment privilege requires not only a lawyer but an astute one.”).
This case is also unlike Turner insofar as appointment of counsel to Turner, who had refused in that case to pay child support, would have unfairly and disproportionately empowered him against the child’s mother, the unrepresented custodial parent. The Court concluded that “[t]he needs of such families play an important role in our analysis”; appointing counsel to Turner would create an “asymmetry of representation” that could make the proceedings “less fair overall.” Turner, 131 S.Ct. at 2519. In this case, in contrast, the only party opposing Gewin in the civil contempt proceeding was the United States government, and providing him counsel *89 would have helped to level the playing field. Finally, unlike in Turner, there is no contention here that counsel was unnecessary because of any substitute procedural safeguards that might be used instead of counsel to reduce the risk of an erroneous deprivation of liberty. Compare id. at 2520.
Given Gewin’s apparent entitlement to appointed counsel, our inquiry focuses on whether Gewin waived that right. The majority’s opinion does an admirable job of sifting through the record to ascertain that Gewin did in fact waive his right to counsel. But had the trial judge followed best practices in the first instance, our confirmation of Gewin’s waiver would have been vastly simplified. Indeed, here, the district court appears to have recognized what needed to be done, yet for whatever reason did not go through those formal steps. In the absence of an adequate colloquy on the record reflecting knowing and intelligent waiver, the kind of whole-record review that we conducted here will continue to be necessary. Such review is not ideal, however, and can readily be avoided.
Rather, the best practice is for the district court to hold a formal colloquy on the record — similar to the standard colloquy that is required in criminal cases — in order to inform an indigent litigant of the right to counsel, if any, and inquire whether the litigant wants the court to appoint counsel.
On-the-record colloquy for assignment or waiver of counsel is the standard operating procedure in criminal trials. See Faretta v. California, 422 U.S. 806, 885, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); Johnson v. Zerbst, 304 U.S. 458, 465, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). In the context of the Sixth Amendment right to counsel in criminal cases, the Supreme Court explained that “[i]t is the solemn duty of a federal judge before whom a defendant appears without counsel to make a thorough inquiry and to take all steps necessary to insure the fullest protection of this constitutional right at every stage of the proceedings.” Von Moltke v. Gillies, 332 U.S. 708, 722, 68 S.Ct. 316, 92 L.Ed. 309 (1948). Also in the context of the Sixth Amendment right, our court has emphasized the practical benefit of timely and explicit on-the-record inquiry: “The most certain assurance” that the defendant is aware of the dangers and disadvantages of self-representation “is by a colloquy on the record between judge and defendant.” United States v. Bailey, 675 F.2d 1292, 1300 (D.C.Cir.1982). “It is precisely because of the ambiguities that commonly accompany purported waivers of counsel” that courts in criminal cases “have generally required a ‘recorded colloquy’ between the defendant and the court, one in which the accused is informed of his right to an attorney, his right to self-representation, and the decided advantages of competent legal representation.” United States v. Tompkins, 623 F.2d 824, 828 (2d Cir.1980); see also Bailey, 675 F.2d at 1299-1300.
The differences between criminal and civil proceedings, and the distinct constitutional grounds for the right to counsel in civil and criminal cases, do not change the fact that a litigant’s knowing and intelligent waiver requires notice of the right. See In re Gault, 387 U.S. 1, 41, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967); Walker, 768 F.2d at 1185. And the practical benefits of an on-the-record colloquy are not limited to the criminal setting.
The 2013 Benchbook for U.S. District Court Judges accordingly recognizes that, although the bases of the right to counsel in the criminal and civil context differ, where a right exists, effective process for protecting it is quite analogous. The Benchbook sets forth model “civil contempt procedures” for judges to follow with uncounseled litigants. If the potential contemnor “desires an attorney but *90 cannot afford one, [the court] must appoint counsel for him ... unless waived.” Fed. Judicial Ctr., Benchbook for U.S. District Court Judges § 7.02, at 236 (6th ed.2013). The process the Benchbook recommends, by explicit cross-reference, is the same as the process where right to counsel attaches in the criminal context: If a defendant does not have an attorney, the court should inform the defendant of his “constitutional right,” if any, “to be represented by an attorney at every stage of the proceedings” and tell him that if he “is unable to afford an attorney, the court will appoint one without cost to him.” Id. § 1.02, at 5 (citing 18 U.S.C. § 3006A).[3] The Benchbook instructs that, after providing the defendant with that information, the court should ask the defendant if he or she understands the right to an attorney, wishes and is able to obtain counsel, or wants the court to appoint counsel. Id. § 1.02, at 6. If the defendant does not want counsel, the court “must make clear on the record that the defendant is fully aware of the hazards and disadvantages of self-representation.” Id.
Any additional burden on a court that conducts a colloquy on the record “is more than offset by avoidance of lengthy appeals to determine whether the defendant’s [due process right] has been violated.” See United States v. Gordon, 829 F.2d 119, 125 (D.C.Cir.1987). Because a reviewing court will have the most certain assurances that a defendant knowingly and intelligently waived his right to counsel when that waiver is made on the record, after an adequate colloquy between the judge and con-temnor, district courts are well advised to make such a record. Indeed, “a brief intercession on the record of this kind” would have effectively eliminated this appeal. Bailey, 675 F.2d at 1300. Had the district court conducted a standard colloquy on the right to counsel before holding Gewin in contempt and had he then clearly waived the right on the record, it seems virtually certain this appeal could have been dismissed as frivolous.
A contempt proceeding by its nature deals with conflict between an individual and a court. Gewin was a challenging litigant. He promised to pay and then sent in a fake check; at a later court appearance he “charged” the court $500,000 each time the judge uttered his name, which he claimed offset his debt to the court; he failed to timely appeal the order holding him in contempt, concentrating instead on filing repeated, unsuccessful habeas petitions directed at his criminal sentence. It is often unclear on the cold record what Gewin’s intentions were: He seemed at once grandiose and furtive, manipulative and delusional, fraudulent and confused. But it is perfectly clear that Gewin’s uncooperative conduct made proceedings difficult for the district court. Things would have been easier on the court, and Gewin’s rights and interests would have been better served, had he been represented by counsel.
People who should be represented nevertheless routinely refuse counsel. Many suffer dire consequences. That is their prerogative, as it was Gewin’s in this case. But it is the courts’ obligation to present such grave choices as clearly as possible. This record leaves nagging doubts whether *91 any right to counsel Gewin may have had was promptly honored. There are few substitutes for routine use of pre-contempt colloquies to protect litigants’ rights and autonomy and to enable just and efficient judicial review.

. I concur in the court’s conclusion that Gew-in waived his right to counsel, but I disagree with the court’s reliance, even in part, on the fact that Gewin received a warning at his criminal trial informing him of the dangers of proceeding pro se and had chosen to represent himself through the criminal trial. See Op. at 79-80. Gewin’s right to counsel in the criminal proceedings derived from the Sixth Amendment. The civil contempt hearing, in contrast, was a separate and distinct civil proceeding. Any information Gewin received about his right to counsel during his criminal proceeding was insufficient to put him on notice that he had a similar right to counsel when faced with civil contempt.

. Gewin contended, for the first time at oral argument on appeal, that his right to retained counsel was also violated because, when he appeared at the September 2007 contempt hearing without counsel, the court failed to provide him with a reasonable amount of time to hire his own lawyer. Oral Arg. Tr. at 13:19-24. Gewin correctly notes that the Due Process Clause is not only relevant to the question whether an indigent defendant is entitled to appointed counsel, but also ensures that a non-indigent civil contemnor has the right to retain an attorney to represent him during contempt proceedings. See generally Gray v. New Eng. Tel. & Tel. Co., 792 F.2d 251, 257 (1st Cir.1986) ("[A] civil litigant does have a constitutional right, deriving from due process, to retain hired counsel in a civil case.”); Potashnick v. Port City Constr. Co., 609 F.2d 1101, 1117-18 (5th Cir.1980) (same); cf. Goldberg v. Kelly, 397 U.S. 254, 270, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) (a recipient of welfare benefits must be allowed to retain an attorney to represent him during a hearing to terminate those benefits, if he so desires). Gewin, who is represented by counsel on appeal, forfeited that argument, however, by failing to discuss it in his briefing and not raising it until oral argument. See Ark Las Vegas Rest. Corp. v. NLRB, 334 F.3d 99, 108 n. 4 (D.C.Cir.2003).

. Section 3006A is primarily concerned with providing appointed counsel to defendants facing criminal charges, but it is not confined to criminal defendants. See, e.g., 18 U.S.C. § 3006A(a)(l)(G) (material witnesses). The statute states that representation shall be provided to any financially eligible individual when the individual “faces loss of liberty in a case, and Federal law requires the appointment of counsel.” Id. § 3006A(a)(l)(I). Civil contemnors face loss of liberty, and, as noted above, the Due Process Clause in some circumstances requires appointment of counsel.